**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-17-0000737**
**04-APR-2019**
**07:55 AM**

NO. CAAP-17-0000737

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

STATE OF HAWAI‘I, Plaintiff-Appellee,
v.
SAMUEL HUFANGA, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1PC171000077 (CR. NO. 17-1-0077))

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Fujise and Chan, JJ.)

Defendant-Appellant Samuel Hufanga (Hufanga) appeals
from the Judgment of Conviction and Sentence, filed October 12,
2017, (Judgment) in the Circuit Court of the First Circuit
(circuit court).[1]

Plaintiff-Appellee State of Hawai‘i (State) indicted
Hufanga on Counts 1, 2, 3, and 4, Robbery in the First Degree
under Hawaii Revised Statutes (HRS) § 708-840(1)(b)(ii) (2014);
Count 5, Burglary in the First Degree under HRS § 708-810(1)(c)
(2014); Count 6, Theft in the First Degree under HRS § 708-
830.5(1)(a) (2014); Count 7, Unauthorized Control of Propelled
Vehicle under HRS § 708-836 (2014); and Count 8, Assault Against
a Law Enforcement Officer in the First Degree under HRS § 707-
712.5(1)(a) (2014).  On July 28, 2017, after a jury trial,
Hufanga was found guilty as charged on all counts.  At the
sentencing hearing on October 12, 2017, the circuit court

---

[1] The Honorable Paul B.K. Wong presiding.

sentenced Hufanga to twenty years imprisonment for Counts 1-4, ten years imprisonment for Counts 5 & 6, and five years imprisonment for Counts 7 & 8, all to run concurrently.

On appeal, Hufanga contends: (1) the initial charge for Counts 1-4 failed to allege the state of mind (intentionally) as to the "use of force" element within HRS § 708-840(1)(b)(ii); (2) the circuit court erred in not severing Count 8 from Counts 1-7 even though Count 8 involved a separate incident; (3) the circuit court failed to instruct the jury regarding the potential merger of Counts 6 and 7; (4) the circuit court erred in admitting digital images without sufficient foundation; and (5) the circuit court erred in denying Hufanga's motion for acquittal.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Hufanga's points of error as follows:

(1) In Hufanga's first point of error he contends that the circuit court erred in denying his "Motion to Dismiss Counts I-IV of the January 17, 2017 Indictment" on the grounds that the State failed to sufficiently charge Counts 1-4 because the culpable state of mind "intentionally" did not precede the "use of force" element of HRS § 708-840(1)(b)(ii) in the respective charges. Hufanga contends that charges 1-4 are "required to state that [Hufanga] had intentionally used force."

"Whether an indictment or complaint sets forth all the essential elements of a charged offense is a question of law, which [the appellate court reviews] under the de novo, or right/wrong, standard." State v. Young, 107 Hawai'i 36, 39, 109 P.3d 677, 680 (2005) (internal quotation marks, citation, brackets, and ellipsis omitted).

HRS § 708-840(1)(b)(ii), Robbery in the first degree, states in relevant part:

> (1)  A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
>
>  . . .
>
> (b)  The person is armed with a dangerous instrument or a simulated firearm and:

. . .

> (ii) The person threatens the imminent use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property;

The Hawai'i Supreme Court has long held that:

> In general, "[w]here the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding, a charge drawn in the language of the statute is sufficient."

State v. Wheeler, 121 Hawai'i 383, 393, 219 P.3d 1170, 1180 (2009) (quoting State v. Jendrusch, 58 Haw. 279, 282, 567 P.2d 1242, 1245 (1977)).

In this case, the relevant portion of the charge for Count 1[2] reads:

> On or about January, 10, 2017, in the City and County of Honolulu, State of Hawai'i, SAMUEL HUFANGA, while in the course of committing theft, and while armed with a simulated firearm, did threaten the imminent use of force against the person of Hyong Chul Kim, a person who was present, with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of Section 708-840(1)(b)(ii) of the Hawai'i Revised Statutes. Pursuant to Section 708-840(2) of the Hawaii Revised Statutes, "simulated firearm" means any object that substantially resembles a firearm, can reasonably be perceived to be a firearm, or is used or brandished as a firearm.

Charges 1-4 are all "drawn in the language of" HRS § 708-840(1)(b)(ii), including the statute's use of the word "intent" prior to "compel acquiescence" and after the "threaten the imminent use of force" clause. See State v. Cordeiro, 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002) (holding that charge for first degree robbery under HRS § 708-840(1)(b)(i) was sufficient where it tracked the language of the statute). Hufanga's reliance on this court's decision in State v. Flores, NO. CAAP-12-0000359, 2013 WL 3364106 (Haw. App. June 28, 2013) (SDO) (vacated on other grounds by State v. Flores, 131 Hawai'i 43, 314 P.3d 120 (2013)) is inapposite because, unlike the present case, the statutes at issue in Flores, HRS § 134-7(b) and (h), contained no mens rea at all.

---

[2] Counts 1 through 4 are identical except for the name of the complaining witness.

Thus, we conclude that charges 1-4, drawn in the language of HRS § 708-840(1)(b)(ii) and including the state of mind as set forth in HRS § 708-840(1)(b)(ii), sufficiently informed Hufanga of the charge he would need to defend against. Therefore, the circuit court did not err by denying Hufanga's Motion to Dismiss Counts I-IV of the January 17, 2017 Indictment.

(2) In Hufanga's second point of error he contends that the circuit court erred in denying his "Motion to Sever Count VIII," filed June 2, 2017, (Motion to Sever) which requested that the circuit court sever Count 8 from Counts 1-7 because Count 8 involved a separate incident from Counts 1-7. In his Opening Brief, Hufanga contends that the cumulative evidence presented regarding the similar charges in Counts 1-4, and the presentation of evidence regarding two separate incidents (Count 8 and Counts 1-7), prejudiced the jury and violated Hufanga's right to due process.

> In considering a motion to sever charges, the trial court must weigh the potential prejudice to the defendant against the interests of judicial efficiency. The court's decision will not be reversed absent a clear showing of abuse of discretion.

State v. Balanza, 93 Hawai'i 279, 283, 1 P.3d 281, 285 (2000) (citing State v. Timas, 82 Hawai'i 499, 512, 923 P.2d 916, 929 (App. 1996)). It is well-settled in Hawai'i that a "failure to renew a pretrial motion for severance waives the claim." Balanza, 93 Hawai'i at 288 n.8, 1 P.3d at 290 n.8 (holding that even the use of severance as an explicit justification for a motion of acquittal in the trial court is insufficient to renew a motion for severance). This is due in part to the difficulty of making a finding of prejudice before trial. State v. Matias, 57 Haw. 96, 98, 550 P.2d 900, 902 (1976).

In this case, Hufanga's Motion to Sever was denied by the circuit court at a pretrial hearing on July 3, 2017. Hufanga did not renew his motion to sever at any point during the trial, moving only for a judgment of acquittal once the State rested its case-in-chief and again at the close of all evidence. Thus, insofar as Hufanga did not renew his motion for severance at the close of the State's case or at the close of all evidence, nor

make any mention of severance with regard to his motions for acquittal, his claim of error on this point was waived.

(3) In Hufanga's third point of error he contends that the circuit court plainly erred when it failed to instruct the jury regarding the potential merger of Count 6 (Theft in the First Degree) and Count 7 (Unauthorized Control of Propelled Vehicle). The State concedes that the circuit court erred in failing to charge the jury with a merger instruction, but contends that the proper result is not reversal, but rather remand to the circuit court for the State to dismiss one of the counts and so preserve the judgment of conviction and sentence of the other.

We agree with both parties that the circuit court committed plain error in failing to give an instruction regarding the possible merger of Counts 6 and 7, pursuant to HRS § 701-109(1)(e) (2014).[3] There is no clear delineation in this case between the acts constituting Theft in the First Degree and Unauthorized Control of Propelled Vehicle. Hufanga took a Lexus SUV valued at more than $20,000 (Count 6) from the Young Street area to Ahonui Street (Count 7). Because both charges were based on the same conduct, it was plain error for the circuit court to fail to charge the jury with a merger instruction.

When a trial court plainly errs by failing to give a merger instruction in the first place, the usual remedy is a retrial. State v. Deguair, 139 Hawai'i 117, 128, 384 P.3d 893, 904 (2016) (citing State v. Padilla, 114 Hawai'i 507, 517, 164 P.3d 765, 775 (Haw. App. 2007). However, as noted approvingly by

---

[3] HRS § 701-109(1)(e) states in relevant part:

> (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:
>
> . . .
>
> (e) The offense is defined as a continuing course of conduct and the defendant's course of conduct was uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

the Supreme Court of Hawai'i in Deguair, when, on appeal, the State suggests dismissing one of the defendant's convictions to remedy the defect rather than face wholesale retrial, the appellate court may remand for that purpose. Deguair, 139 Hawai'i at 128, 384 P.3d at 904 (citing Padilla, 114 Hawai'i at 517, 164 P.3d at 775). "HRS § 701-109(1)(e) only prohibits *conviction* for two offenses if the offenses merge; it specifically permits *prosecution* on both offenses." Padilla, 114 Hawai'i at 517, 164 P.3d at 775 (emphasis in original). Therefore, even if the Theft in the First Degree and Unauthorized Control of Propelled Vehicle charges merged pursuant to HRS § 701-109(1)(e), conviction on one of the two charges was permissible.

In this case, the jury found Hufanga guilty beyond a reasonable doubt of both charges (Counts 6 and 7). Following our decision in Padilla, we see no reason why the State should not be permitted to dismiss one of the two charges and maintain the judgment of conviction and sentence on the other. Accordingly, on remand, we afford the State the option of: 1) dismissing either Count 6 or Count 7 and retaining the judgment of conviction and sentence on the non-dismissed count; or 2) retrying Hufanga on both Counts 6 and 7 with an appropriate merger instruction.

(4) In Hufanga's fourth point of error he contends that the circuit court erred in admitting digital images into evidence without sufficient foundation. Specifically, Hufanga contends that the surveillance footage admitted at trial lacked sufficient foundation as to the equipment used to record the digital images because the attesting witness did not know how to set up the system, did not read the system's instruction manual, and did not do anything to maintain the video surveillance system. Hufanga provides no legal support for this claim. The State argues that the foundation was sufficient under Hawaii Rules of Evidence (HRE) Rule 901(b)(1)[4] because the attesting witness testified

---

[4]   HRE Rules 901(a) and (b)(1) state in relevant part:

that the surveillance video accurately depicted the locations and persons shown.

We review a question of foundation regarding the admissibility of evidence for an abuse of discretion.

> When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse.

State v. Eid, 126 Hawai'i 430, 440, 272 P.3d 1197, 1207 (2012) (quoting State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009)). As has long been the practice of Hawai'i courts, and under HRE Rule 901(b)(1), photographic or video evidence can be authenticated by testimony demonstrating that the evidence correctly represents what it is claimed to represent, regardless of the technical details involved in recording the evidence. See Territory of Hawai'i v. Hays, 43 Haw. 58, 65 (Haw. Terr. 1958) ("A witness may verify a photograph of the scene as the correct representation of the same at the time in question, provided the witness is familiar with the scene and is competent to testify that the photograph correctly represents the scene; in such case the photograph should be admitted in evidence.").

In this case, with regard to the foundation laid for the admission of the video recordings, the circuit court found:

> [T]he foundation laid by the State for the admission of State's exhibit 38 was sufficient. The witness was able to testify that he's familiar with the video system. He actually purchased the system. He testified that it was accurately recording what was depicted on the video screens that he was able to see.
>
> And more importantly, on January 10, 2017, he did testify that the video was running and recording the parking lots and the courtyard, that the system was operating properly, and the seven clips that he viewed that was recorded on January 10th, 2017 were accurately recorded and, on voir dire and further examination, was able to testify as to the

---

> (a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
> (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
> (1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

> accuracy of the recording in that it depicted the furniture
> and chairs in the courtyard as well as people that were
> present at the scene on that date. And therefore, the court
> did find sufficient reliability and accuracy of the video
> such that State's 38 could have been and should have been
> admitted into evidence.

On appeal, Hufanga does not challenge the circuit court's findings as erroneous, but rather, contends that the findings provide an insufficient foundation for the admission of the video recordings as evidence, in light of certain statements made by the attesting witness. We disagree. The attesting witness's testimony that he did not know how to set up the system without help, did not read the system's instruction manual himself, and did not do anything to maintain the video surveillance system because it ran twenty-four hours a day is not dispositive of the issue. Rather, as the circuit court found, the attesting witness's ownership of the video recording system; statement that it was functioning properly at the time in question; and testimony as to the recordings' accurate representation of the locations, furniture, and people present at the Young Street location on January 10, 2017, provided sufficient foundation for the admission of the video recordings under HRE Rule 901(b)(1). Thus the circuit court did not abuse its discretion in admitting the video recordings into evidence.

(5) In Hufanga's fifth point of error he contends that the circuit court erred in denying Hufanga's Motion for Judgment of Acquittal on Counts 1-4 (Robbery in the First Degree), Count 5 (Burglary in the First Degree), and Counts 6 & 7 (Theft in the First Degree and Unauthorized Control of Propelled Vehicle) made at the close of the State's case and renewed at the close of all evidence. Specifically, Hufanga asserts that there was no evidence elicited at trial showing that he was the individual that entered the game room or robbed the individuals within and that there was no evidence that he committed theft in the first degree or unauthorized control of a propelled vehicle.

We review a trial court's denial of a motion for a judgment of acquittal as follows:

> The standard to be applied by the trial court in ruling upon
> a motion for a judgment of acquittal is whether, upon the
> evidence viewed in the light most favorable to the

8

> prosecution and in full recognition of the province of the [trier of fact], a reasonable mind might fairly conclude guilt beyond a reasonable doubt. An appellate court employs the same standard of review.

State v. Pone, 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995) (alteration in original) (quoting State v. Alston, 75 Haw. 517, 528, 865 P.2d 157, 164 (1994)).

We have previously held that, "[c]ircumstantial evidence is competent evidence and can be used to prove facts necessary to establish the commission of a crime." State v. Hoe, 122 Hawai'i 347, 349, 226 P.3d 517, 519 (App. 2010).

> It is a basic rule, however, that guilt in a criminal case may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence. State v. Murphy, 59 Haw. 1, 575 P.2d 448 (1978). No greater degree of certainty is required where a conviction is based solely on circumstantial evidence rather than on direct evidence. State v. Smith, 63 Haw. 51, 621 P.2d 343 (1980).

State v. Bright, 64 Haw. 226, 228, 638 P.2d 330, 332 (1981).

> And an inference is nothing more than "a logical and reasonable conclusion of the existence of a fact . . . from the establishment of other facts[,] from which, by the process of logic and reason, and based upon human experience, the existence of the assumed fact may be concluded by the trier of fact."

Pone, 78 Hawai'i at 273, 892 P.2d at 466 (quoting State v. Emmsley, 3 Haw. App. 459, 464-65, 652 P.2d 1148, 1153, cert. denied, 65 Haw. 683 (1982) (emphasis in original)).

In the present case then, we review the evidence presented at trial in the light most favorable to the prosecution to determine if a reasonable mind might fairly conclude that Hufanga's identity and the theft of the Lexus were established beyond a reasonable doubt. Complaining witness Hyong Chul Kim (Kim) testified that a little before 1:00 a.m., on January 10, 2017, two individuals entered the game room, one was tall and thin and carrying a stick, and the second was shorter and chubby with distinctive arm tattoos and carrying a firearm. Kim testified that the shorter, chubby man wore a mask and took the keys to the Lexus from the game room along with complaining witness Jae Ho Son's phone, approximately eleven hundred dollars in cash, and other assorted items. Complaining witness Ki Pyo Hong (Hong) testified that two men entered the game room--one was taller and the other was wearing a mask and carrying a firearm of

some sort. Complaining witness Choe Jion Suzuki (Suzuki) testified that the man she saw enter the game room wore a mask, carried a gun, and took her bag, money, clothes, and a tablet computer from the room in which she was located.

Kim testified that he parked the Lexus at a Young Street location on the night in question. He further testified that surveillance video showed the Lexus being driven away from the Young Street location after the two men left the game room. Officer Jessica Marie Tablit testified that she was assigned to look for a white Lexus at 1:28 a.m. on January 10, 2017, and located the vehicle in the area of Ahonui Street/Hulali Place in Kalihi within a few minutes. Officer Tablit testified that the vehicle was turned on and that she saw one man sitting in the driver seat of the Lexus and later identified that man as Hufanga. Officer Toby Kim testified that Hufanga had distinctive arm tattoos and that $1,120 in cash, a cell phone belonging to complaining witness Jae Ho Son, and car keys fell out of Hufanga's pocket while he was struggling with Officer Tablit and another officer.

Kim testified that officers escorted him to where the Lexus was recovered, that he identified the mask that the chubby man wore lying in the passenger seat of the Lexus, and that he identified both the stick carried by the slimmer man and the firearm carried by the chubby man lying in the trunk of the Lexus. Suzuki testified that officers escorted her to where the Lexus was recovered and at that location she identified her distinctive bag and clothing that the chubby man with the gun took from her in the game room.

Hufanga first contends that the prosecution presented no evidence at trial showing that Hufanga was the individual that entered the game room and committed Robbery in the First Degree (Counts 1-4) and Burglary in the First Degree (Count 5). We disagree. The officers testified that Hufanga matched the general description provided by all of the complaining witnesses, including his distinctive arm tattoos. The officers further testified that Hufanga was apprehended within less than an hour of the incident while sitting in the driver's seat of the Lexus;

10

in the presence of a mask and firearm identified by the complaining witnesses; with the phone, Lexus keys, and matching amount of cash reported by the complaining witnesses in his pocket; and with the other stolen items in the trunk of the Lexus. Thus, viewing the trial record in the light most favorable to the prosecution, a reasonable trier of fact could fairly conclude beyond a reasonable doubt that the prosecution had proved that Hufanga was the individual who entered the game room and committed Robbery in the First Degree (Counts 1-4) and Burglary in the First Degree (Count 5).

Hufanga also contends that there was no evidence that he committed Theft in the First Degree[5] (Count 6) or Unauthorized Control of Propelled Vehicle[6] (Count 7). We disagree. The Lexus was valued at $33,000 at the time of the incident. Kim testified that video surveillance showed the white Lexus being driven away from its Young Street location after Kim's keys for the Lexus were taken without Kim's permission, and at the same time that the chubby man was leaving the game room around 1:00 am. Within an hour, Officer Tablit identified Hufanga in a different part of town (Kalihi), sitting in the driver seat of the Lexus with the headlights and vehicle turned on. Hufanga attempted to flee when approached and, upon his apprehension, the keys for the Lexus fell out of his pocket.

It is a reasonable inference from these facts that Hufanga exerted control over the property of Kim, the value of which exceeded twenty thousand dollars, with the intent to deprive Kim of the Lexus (Count 6), and that Hufanga was intentionally or knowingly operating the Lexus without the

---

[5] HRS § 708-830.5(1)(a) provides that "[a] person commits the offense of theft in the first degree if the person commits theft . . . [o]f property or services, the value of which exceeds $20,000[.] . . . Theft in the first degree is a class B felony."

[6] HRS § 708-836 provides that:

> [a] person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent . . . . Unauthorized control of a propelled vehicle is a class C felony.

consent of Kim (Count 7). Viewing the trial record in the light most favorable to the prosecution, a reasonable trier of fact could fairly conclude beyond a reasonable doubt that the prosecution had proved that Hufanga committed Theft in the First Degree (Count 6) or Unauthorized Control of Propelled Vehicle (Count 7). Accordingly, the trial court did not err in denying Hufanga's motion for judgment of acquittal.

Based on the foregoing, the "Judgment of Conviction and Sentence" entered on October 12, 2017, in the Circuit Court of the First Circuit is AFFIRMED as to Counts 1-5 and Count 8. We VACATE the Judgment as to Counts 6 and 7 and REMAND the case for further proceedings consistent with this opinion. Within 30 days after the effective date of this court's entry of judgment in this appeal, the State shall notify the circuit court whether the State will elect to (1) dismiss Count 6 or Count 7 or (2) retry Hufanga on both counts. If the State chooses to dismiss Count 6 or Count 7, the circuit court shall enter an Amended Judgment that reinstates the conviction and sentence on the non-dismissed count and reflects the dismissal of the other count with prejudice. If the State chooses to retry Hufanga on both Counts 6 and 7, the circuit court shall give an appropriate merger instruction on retrial.

DATED: Honolulu, Hawai'i, April 4, 2019.

On the briefs:

Walter J. Rodby
for Defendant-Appellant.

Sonja P. McCullen
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12